UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Sharif Allende

   v.                                    Civil No. 19-cv-208-JD
                                         Opinion No. 2019 DNH 189
Commissioner, New Hampshire
Department of Corrections


O R D E R

Sharif Allende, proceeding pro se and in forma pauperis, is an inmate at the New Hampshire State Prison. He brought suit against the Commissioner of the New Hampshire Department of Corrections and other officials and officers in the Department and at the New Hampshire State Prison to challenge the department's policy that requires inmates to maintain their hair so that a comb may be pulled through it easily. As determined on preliminary review, Allende asserts claims under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc, et seq., ("RLUIPA"), and 42 U.S.C. § 1983 for violation of his First and Fourteenth Amendment rights. The Commissioner moves to dismiss the claims.

Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint on the ground that it fails "to state a claim on which relief can be granted." To decide the

motion, the court accepts as true all of the properly pleaded facts in the complaint and draws reasonable inferences in favor of the nonmoving party. [Lemelson v. Bloomberg L.P., 903 F.3d 19, 23 (1st Cir. 2018)](). The plaintiffs must allege facts that allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." [Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)]().

Background

Sharif Allende was admitted to the New Hampshire State Prison on March 21, 2017, after completing a prison sentence served at the Massachusetts Correctional Institution. When he arrived, his hair was styled in dreadlocks.

During the admission process in the receiving and diagnostic department of the prison, Officer David Burris asked Allende if he could "take those things out of [his] hair." Doc. no. 1, ¶ 10. Allende responded that he had dreadlocks and that they could not be taken off. He explained that he was Rastafarian and would not cut his hair. Burris told him that if he did not cut his hair he would be placed in the Secure Housing Unit ("SHU") and would not be let out. Although Allende was not sent to SHU, he decided to shave his head to avoid the risk.

In his complaint, Allende alleges that Rastafarian is a religious denomination and that Rastafarians believe that they

2

are the reincarnation of ancient Israelites. As part of the religion, its followers take a vow of Nazarite. Dreadlocks are a symbol of the lion of Judah. He further alleges that the New Hampshire State Prison recognizes the Rastafarian denomination.

Allende cites PPD 7.30 as the prison policy that forbids dreadlocks. Under PPD 7.30 inmates cannot grow their hair and facial hair to a length that would prevent corrections officers from completing "an efficient visual inspection of the hair for contraband." Doc. no. 1-1, at *2. In addition, "[a]ny person under supervision must be able to pull a comb through the hair or facial hair with reasonable ease at the direction of a Correction Officer." Id. As of February 20, 2017, braids and dreadlocks were prohibited.

In Claim One, Allende states that the prison's policy that made him cut his hair violated his First Amendment right to free exercise of his religion and violated RLUIPA. In Claim Two, Allenge states that the prison violated his right to equal protection under the Fourteenth Amendment by making Rastafarians but not Native Americans cut their hair. In Claim Three, Allende alleges that he suffered emotional distress in violation of the Eighth Amendment by being forced to shave off his dreadlocks, which was not addressed on preliminary review. For purposes of relief, Allende seeks a declaration that the defendants violated his rights under the United States

Constitution and federal law, an injunction against the prison's hair policy and to have his disciplinary infractions under the hair policy be removed from his record, and monetary damages.

The magistrate judge held a hearing on Allende's request for injunctive relief on September 19, 2019, and a second hearing for October 15, 2019.  At the October 15 hearing, Allende moved to withdraw his request for preliminary injunctive relief because he requests had been satisfied.  The magistrate judge issued the following order:

> On October 15, 2019, a hearing was held on plaintiff Sharif Allende's request for preliminary injunctive relief included in his complaint (Doc. No. 1).  As stated on the record at that hearing, Mr. Allende has been provided with the relief he sought in his preliminary injunction request.  Specifically, the New Hampshire Department of Corrections ("DOC") has reduced Allende's March 31, 2018 disciplinary report to a "bad spot report" and his March 21, 2019 disciplinary report to an incident report, rendering moot Allende's request that the court direct the DOC to expunge those disciplinary reports.  Further, Mr. Allende has been advised that if he files a request for a exemption to the "no dreadlocks" hair policy with the Warden, that request will be granted, rendering moot Allende's request that the court direct the DOC to allow him to grow dreadlocks.  For those reasons, and for reasons stated on the record at the October 15, 2019 hearing, Allende's oral motion to withdraw his request for preliminary injunctive relief is GRANTED.

Endorsed Order, Nov. 4, 2019.

Discussion

The defendants move to dismiss Allende's claims as insufficient to state a claim for relief and on the ground of qualified immunity. Allende filed an objection along with the affidavits of other inmates. The defendants filed a reply to argue that the court should disregard the affidavits filed with Allende's objection.

A. Affidavits

The defendants correctly point out that the affidavits Allende submitted with his objection cannot be considered for purposes of their motion to dismiss under Rule 12(b)(6). See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Hamann v. Carpenter, 2018 WL 2012689, at *3 (D. Mass. Apr. 30, 2018). Nevertheless, the court has read the affidavits and concludes that they do not support Allende's claims, as is explained further below.

B. Injunction

Allende has achieved the relief he sought by way of an injunction, as stated in the magistrate judge's order dated November 4, 2019. For that reason, Allende's claim for injunctive relief against the prison's policy that forbids

dreadlocks and to remove his disciplinary infractions related to that policy is moot.

C.  Declaratory Judgment

Allende seeks a declaratory judgment that the defendants' "acts and omissions described" in the complaint violate his "rights under the Constitution and laws of the United States." Doc. no. 1, ¶ 15.  The defendants contend that Allende lacks standing to seek a declaratory judgment.

To have standing to maintain a claim for a declaratory judgment, a plaintiff must allege both injury caused by the defendants' unlawful conduct and "'a sufficient likelihood that he will again be wronged in a similar way.'" Berner v. Delahanty, 129 F.3d 20, 24 (1st Cir. 1997) (quoting City of Los Angeles v. Lyons, 461 U.S. 95, 111 (1983); see also Mota v. Madeiros, 2018 WL 1524538, at *3 (D. Mass. Mar. 28, 2018).  For purposes of establishing an injury, a plaintiff must show "that he has suffered (or has been threatened with) 'an invasion of a legally protected interest which is . . . concrete and particularized,'" Berner, 129 F.3d at 24 (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

Even assuming that Allende could establish an injury for purposes of standing, he cannot show a sufficient likelihood that he will again be wronged in the same way.  As Allende

conceded for purposes of his request for injunctive relief, the defendants have provided the relief he sought against the hair policy making an injunction unnecessary.  Therefore, under these circumstances, Allende lacks standing to pursue a declaratory judgment.

D.  RLUIPA – Claim One

In the complaint, Allende alleges that the defendants violated RLUIPA by preventing him from wearing dreadlocks as part of his Rastafarian religion.  The defendants move to dismiss the RLUIPA claim on the ground that money damages are not available.  The court agrees.

Sovereign immunity precludes money damages against states and state officials sued in their official capacities, and sovereign immunity was not waived for purposes of RLUIPA. Sossamon v. Texas, 563 U.S. 277, 293 (2011).  Although the First Circuit has not addressed the issue, the majority of courts have concluded that money damages are not available against defendants sued in their individual capacities under RLUIPA. See, e.g., Fox v. Sheftic, 2019 WL 5597906, at *5 (N.D.N.Y. Oct. 3, 2019) (citing Holland v. Goord, 758 F.3d 215, 224 (2d Cir. 2014)); Pickwell v. Newton, 2019 WL 4675374, at *5 (E.D. Va. Sept. 25, 2019) (citing Rendelman v. Rouse, 569 F.3d 182, 189 (4th Cir. 2009), and Haight v. Thompson, 763 F.3d 554, 560-70

7

(6th Cir. 2014)); Baker v. O.D.O.C., 2019 WL 4454503, at *2 (D. Or. Sept. 17, 2019) (citing Wood v. Yordy, 753 F.3d 899, 904 (9th Cir. 2014)); Adams v. Corrs. Emergency Response Team, 2019 WL 4074653, at *2 n.4 (E.D. Pa. Aug. 28, 2019) (citing Sharp v. Johnson, 669 F.3d 144, 154 (3d Cir. 2012)); Hoke v. Lyte, 2019 WL 4440128, at *13 (S.D. Ga. Aug. 14, 2019) (citing Smith v. Allen, 502 F.3d 1255 (11th Cir. 2007)); Gregory v. Pfister, 2019 WL 3287873, at *2 (N.D. Ill. July 22, 2019) (citing Nelson v. Miller, 570 F.3d 868, 869 (7th Cir. 2009)). In addition, other judges in this district and circuit have concluded that money damages are not available under RLUIPA against state officials sued in their individual capacities. Musterd v. R.I. Dep't of Health, 2018 WL 1684345, at *3 (D.R.I. Mar. 19, 2018); Staples v. Prison, 2017 WL 519189, at *2 (D.N.H. Feb. 8, 2017); Cryer v. Spencer, 934 F. Supp. 2d 323, 334 (D. Mass. 2013).

Therefore, no relief is available to Allende under RLUIPA, and the claim must be dismissed.

E. Violations of the First, Eighth, and Fourteenth Amendments Claims One, Two, and Three

Allende alleges that the defendants' enforcement of the hair policy also violated his First, Eighth, and Fourteenth Amendment rights. Those claims are brought pursuant to 42 U.S.C. § 1983. The defendants contend that Allende cannot

recover damages against the defendants sued in their official capacities, and for that reason, the claims against those defendants must be dismissed. With respect to the claims against the defendants in their individual capacities, they contend that they did not violate Allende's rights. In addition, with respect to the First Amendment claim, the individual defendants argue that they are entitled to qualified immunity.

1. Sovereign Immunity – All Claims Against Defendants in Their Official Capacities

"Absent an explicit waiver from the state, the Eleventh Amendment bars official capacity suits against state actors in federal court unless the suit seeks prospective injunctive relief." Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). Allende's claim for prospective injunctive relief is moot. Nothing suggests that New Hampshire has waived its immunity for purposes of Allende's § 1983 claims. See, e.g., Santos v. Smith, 2016 WL 1032791, at *1 (D. Mass. Mar. 14, 2016).

Therefore, Allende's claims under § 1983 against the defendants in their official capacities are dismissed.

2. Qualified Immunity – First Amendment – Claim One

The doctrine of qualified immunity protects state employees, sued in their individual capacities, from liability

9

for damages as long as their conduct did not violate clearly established constitutional or statutory rights that would have been known to a reasonable person.  Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982).  The court uses a two-part test to determine whether qualified immunity exists:  (1) whether the facts alleged by the plaintiff show the violation of his constitutional right, and (2) whether that right was clearly established when the alleged violation occurred.  Pearson v. Callahan, 555 U.S. 223, 232 (2009).  The court may skip the first step and go directly to the second step of the inquiry. Hunt v. Massi, 773 F.3d 361, 367 (1st Cir. 2014).

The defendants contend that they are entitled to qualified immunity with respect to Allende's claim that enforcement of the hair policy violated his First Amendment right to free exercise of his religion.  They further contend that there was no clearly established First Amendment right under the free exercise clause to wear dreadlocks in prison in March of 2017, when Allende arrived at the prison and cut his hair.  In support, they cite a list of cases from 2014 through 2018 to show that prisoners' rights with respect to prison hair policies were not clearly established.

The Second Circuit long ago recognized the First Amendment right of Rastafarian prisoners to wear their hair in dreadlocks. See Benjamin v. Coughlin, 905 F.2d 572, 576-77 (2d Cir. 1990);

Michel v. Manna, 2017 WL 1381859, at *4 (N.D.N.Y. Jan. 17, 2017) (Rastafarian prisoner's right to wear dreadlocks clearly established). Other courts, however, have not recognized that right. See Luther v. White, 2019 WL 511795, at *13 (W.D. Ky. Feb. 8, 2019) (citing cases and holding that it was not clearly established in January of 2017 that prison grooming standards banning dreadlocks violated the free exercise clause of the First Amendment). In December of 2012, the Tenth Circuit considered whether it was clearly established that a prison grooming policy, which required hair to be able to be combed out, would violate First Amendment free exercise rights. Stewart v. Beach, 701 F.3d 1322, 1333 (10th Cir. 2012). The Tenth Circuit concluded that the law was unsettled and, therefore, not clearly established.

There is no Supreme Court case or First Circuit case on point. In 2011, the First Circuit held that enforcement of the New Hampshire State Prison's policy restricting facial hair did not violate the free exercise clause of the First Amendment. Kuperman v. Wrenn, 645 F.3d 69, 77 (1st Cir. 2011). Given the state of the law in March of 2017, it was not clearly established that enforcement of the New Hampshire State Prison's hair grooming policy would violate a prisoner's First Amendment free exercise right.

11

The defendants sued in their individual capacities in Claim One are entitled to qualified immunity and the claim is dismissed.

### 3. Eighth Amendment – Claim Three

In Claim Three, Allende alleges that Officer D. Burris violated his Eighth Amendment rights by requiring him to shave off his dreadlocks. He alleges that his request slips to Chaplain Daly and his discussions with him show that Chaplain Daly knew that Rastafarians wear dreadlocks. He further alleges that he "suffered mental and emotional distress from the violence done to his Religion by being forced to shave his [dreadlocks] and breach his 'vow to Nazarite.'" Doc. no. 1, ¶ 14.

The defendants argue that Allende cannot recast his First Amendment claim as an Eighth Amendment claim. The Eighth Amendment protects against cruel and unusual punishment in prison, while the First Amendment protects the free exercise of religion. Whether or not Allende's alternative pleading is cognizable, qualified immunity would also protect Burris from liability in this context.[1] The court has found no cases that

---

[1] The defendants also argue that the Eighth Amendment claim is barred by 42 U.S.C. § 1997e(e). Section 1997e(e) provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or

12

show that it was clearly established in March of 2017 that enforcement of the prison's hair policy would violate Allende's Eighth Amendment rights.

Therefore, Allende does not state an actionable claim under the Eighth Amendment.

4. Fourteenth Amendment – Claim Two

In his complaint, Allende alleges that the defendants violated his Fourteenth Amendment right to equal protection of the laws by requiring him to shave off his dreadlocks while allowing Native American inmates to keep long hair. The defendants contend that Allende does not allege an equal protection claim because the hair policy does not limit the length of hair but instead requires that hair be groomed so that the inmate can run a comb through it with reasonable ease.[2]

The Fourteenth Amendment precludes governmental action that denies any person the equal protection of the laws. U.S. Const. amend. XIV, § 1. To state an equal protection claim, a

---

emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." Whether or not § 1997e(e) bars claims for violation of constitutional rights is unsettled. See, e.g., Wilcox v. Brown, 877 F.3d 161, 169 (4th Cir. 2017); Ashley v. Metelow, 2019 WL 5493482, at *5 (D.N.J. Oct. 25, 2019).

[2] The defendants also contend that the Fourteenth Amendment claim is barred because it is duplicative of Allende's RLUIPA and First Amendment claims. The defendants are mistaken.

13

plaintiff must allege facts that show he was treated differently from others who are similar to him in all relevant respects and that the difference in treatment was because of an impermissible consideration such as his religion.  Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013).  At the first step, the plaintiff must show that "the parties with whom he seeks to be compared have engaged in the same activity vis-à-vis the government entity without such distinguishing or mitigating circumstances as would render the comparison inutile."  Cordi-Allen v. Conlon, 494 F.3d 245, 251 (1st Cir. 2007).

The governmental action that Allende challenges is the prison's hair grooming policies.  Under those policies, inmates cannot grow their hair to a length that would prevent corrections officers from completing "an efficient visual inspection of the hair for contraband" and inmates "must be able to pull a comb through the hair or facial hair with reasonable ease at the direction of a Correction Officer."  Based on those policies, the prison banned braids and dreadlocks.

In support of his claim, Allende alleges that the prison allows Native Americans to grow long hair.  He does not allege that the prison allows Native Americans to wear braids or dreadlocks.  He also does not allege that corrections officers were unable to do visual inspections of the hair or that Native Americans are unable to pull a comb through their hair.  In

contrast, Allende wanted to wear his hair in dreadlocks, which he does not deny cannot be combed.  As such, Allende does not allege facts that show he was treated differently from other similarly situated inmates, such as inmates who were unable to pull a comb through their hair.[3]

Allende has not alleged a cognizable claim for violation of the equal protection clause of the Fourteenth Amendment.

## Conclusion

For the foregoing reasons, the defendants' motion to dismiss (document no. 11) is granted.  All claims against all defendants are dismissed.

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

November 12, 2019
cc:  Counsel and Pro Se Party of record.

---

[3] The affidavits that Allende submitted with his objection are from four inmates who state that they have never been asked to run a comb through their hair.  Two of them say that their hair was long.  One says that he never saw anyone be asked to run a comb through his hair.  Importantly, none of the affiants states that he had braids or dreadlocks or any style that would preclude a visual inspection or running a comb through his hair.  Therefore, even if the affidavits were properly submitted, they do not help Allende's claim.

15